**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

| | |
|---|---|
| Jason Billingsley, Jeremy Clifford, Mike Robbins, Bryan Stutz, and Kyle Wood, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CSX Transportation, Inc.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT<br>(JURY TRIAL DEMANDED)** |

## INTRODUCTION

1. Defendant CSX Transportation, Inc. ("CSX") operates a twenty-four-hour-a-day, 365-day-a-year business, meaning employees are needed for work on weekends and holidays. While CSX's employees understand that working on weekends and holidays comes with the territory, they did not anticipate having to work through serious illnesses, miss their children's births, or choose between caring for their sick loved ones and keeping their jobs.

2. These activities, of course, make up the core substantive conduct protected by the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"). Yet, CSX has engaged in a brazen pattern and practice of unlawfully discouraging FMLA leave and retaliating against workers who rely on the FMLA's protections.

3. *First*, beginning in 2015, the company implemented an attendance policy that explicitly punishes employees for taking lawful FMLA leave. The policy assigns negative points for absences but allows employees to remove points through subsequent uninterrupted attendance over a specified period of time. Employees who take FMLA leave during the

remediation period, however, are deemed ineligible to reduce their points. As a consequence, employees who have taken FMLA leave are treated more unfavorably than those who have not. Making matters worse, CSX's attendance policy singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal leave," "jury duty," "work-related illness or injury with valid doctor's note," or "bereavement leave," among others, maintains his or her eligibility to remove negative points from his or her record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces (and avoiding termination). They cannot do both.

4. *Second*, beginning in 2017 or earlier and continuing to present, CSX has terminated or suspended over 100 employees on the allegation that these employees fraudulently took FMLA leave. CSX's large-scale purge of its workforce culminated immediately after the 2017 holiday season. One by one, employees learned that their holiday gift from CSX for the exercise of federally-protected FMLA rights was a suspension or pink slip. CSX's allegations of fraud were not only false but baseless. CSX punished these employees without any evidence of fraud. On the contrary, these workers *substantiated* their entitlement to FMLA leave. CSX terminated or suspended them anyway.

5. CSX's genuine motivations are crystal clear. Through its actions, CSX has sought to chill the lawful use of FMLA leave and punish workers who take it. Honoring the FMLA requires businesses to bear the costs of retaining a greater number of employees to cover all shifts. These costs can be especially acute for businesses like CSX, which operate twenty-four hours a day, seven days a week, 365 days a year, including on weekends and holidays. By disregarding the FMLA's clear mandate, CSX has saved significant sums of money by reducing

its total workforce, limiting its employees' lawful use of FMLA leave, and sending a clear message to the remaining employees: Take FMLA leave at you own peril.

6. CSX, through its conduct, has violated the FMLA's anti-retaliation and anti-interference provisions. *See* 29 U.S.C. § 2615(a)(1)-(2).

7. Plaintiffs bring this class action to restrain and enjoin CSX from engaging in a pattern and practice of punishing employees for taking FMLA leave and to recover damages caused by CSX's unlawful retaliatory conduct.

## PARTIES

8. Jason Billingsley, who worked for CSX for more than a half decade, resides in Westville, Illinois.

9. Plaintiff Jeremy Clifford, who worked for CSX for more than six years, resides in Morrow, Ohio.

10. Plaintiff Mike Robbins, who works for CSX, resides in Greenville, New York.

11. Plaintiff Bryan Stutz, who worked for CSX for nearly twenty years, resides in Pembroke, Massachusetts.

12. Plaintiff Kyle Wood, who has worked for CSX since 2007, resides in North Syracuse, New York.

13. CSX is headquartered in Jacksonville, Florida and provides freight rail transportation services throughout the country, including in Florida.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction over Plaintiffs' FMLA claims under 28 U.S.C. § 1331.

15. Venue is proper under 28 U.S.C. § 1391 because CSX is headquartered in this

division, the majority of the at-issue decisions were made by people who work for CSX at its headquarters.

## FACTUAL ALLEGATIONS
## CSX'S COMPANYWIDE PRACTICES

16. CSX operates a twenty-four-hour-a-day, 365-day-a-year business, meaning employees are needed on weekends and holidays.

17. While employees know that employment with CSX means having to work on weekends and holidays, they did not anticipate having to work through illnesses, miss their children's births, or choose between working and caring for their sick loved ones.

18. Many employees have relied on FMLA leave.

19. Employees' lawful use of FMLA has prevented CSX from reducing its workforce in the way it would like.

20. CSX has therefore sought to curb its employees lawful us of FMLA.

21. *First*, CSX has sought to deter its employees from using FMLA by, in 2015, implementing an attendance policy called the "Crew Attendance Point System," or "CAPS," which penalizes employees for taking FMLA leave.

22. Under the CAPS policy, CSX assigns points to employees who miss work. When employees accrue a certain number of points, they are terminated. CSX erases points from an employee's record when the employee goes a certain period of time without missing a day of work.

23. However, under the terms of the policy, employees who take FMLA leave during that same remediation period are not eligible to have points erased from their record. For example, an employee who does not miss work for the period specified in the CAPS policy will

have points removed from his record. A second employee, who takes a single day off work to attend the birth of his child but is otherwise identically situated to the first employee, *retains* his points and remains on probation—and at a heightened risk of termination. As a consequence, employees who have taken FMLA leave are treated less favorably than those who did not.

24. Making matters worse, CSX's attendance policy effectively singles out FMLA leave from other forms of leave. An employee who takes leave for "approved vacation," "personal leave," "jury duty," "work-related illness or injury with valid doctor's note" or "bereavement leave," among others, maintains his or her eligibility to remove negative points from his or her record. CSX's attendance policy effectively discriminates against workers who rely on FMLA leave and forces those employees to choose between using their FMLA leave or returning to CSX's good graces. They cannot do both.

25. CSX's purpose in enacting the CAPS policy was to discourage the lawful use of FMLA leave and punish employees who took FMLA leave.

26. *Second*, beginning in 2017 or earlier, CSX has engaged in a concerted campaign to purge itself of a significant portion of its employees who rely on FMLA leave and scare the remainder of its workforce from taking such leave by disciplining and terminating employees who use FMLA leave on weekends and holidays.

27. CSX's campaign culminated in January of 2018, when CSX charged over 140 of the over 800 employees who took FMLA leave on Christmas Eve, Christmas Day, New Year's Eve, or New Year's Day with a workplace rule violation—dishonesty—and removed them from service without pay for supposedly using their FMLA leave solely to avoid working on a holiday.

28. CSX charged these employees with a workplace rule violation without having any

reason to believe any of them had abused their FMLA leave.

29.     Under CSX's collective bargaining agreements with its employees' unions, the charged employees had a right to an internal hearing before they could be disciplined. The hearings, however, are not a neutral forum where an employee's responsibility for a supposed rule violation is fairly and independently determined. Instead, such hearings operate as a perfunctory means to assign blame to employees regardless of their actual responsibility for workplace rule violations. Hearing officers, who act as both prosecutor and judge, are members of management who are appointed by the company. Hearing officers have no legal training; charged employees do not have legal counsel present; the rules of evidence do not apply; and employees are frequently found responsible based entirely on hearsay. The company can compel witnesses to appear but employees cannot. The company may conduct an investigation prior to the hearing but does not provide any discovery—not to mention exculpatory evidence—to the charged employee. And the hearings typically take less than one day. It is well known that these hearings almost always are decided in favor of the railroad.

30.     For many of the charged employees, CSX leveraged the kangaroo-court nature of its discipline process by telling the employees that it would terminate them if they insisted on their right to a hearing. CSX then offered the employees a waiver, pursuant to which they could admit guilt, forgo the hearing, and receive a suspension without pay in lieu of termination.

31.     For the employees who refused to admit to something they had not done and the employees to whom it did not offer a waiver, CSX held pro forma hearings on the spurious charges.

32.     At the hearings, CSX unlawfully placed the burden on the employees to reveal more information about their and their loved ones' medical conditions than the FMLA requires.

33. The hearings nevertheless completely refuted CSX's allegation of widespread FMLA fraud. On the contrary, employees pleaded with CSX to consider evidence that they properly exercised their right to FMLA leave on account of their pre-existing—and well known—serious health conditions (or those of their family members). CSX did not listen.

34. After the hearings, CSX either suspended or terminated the overwhelming majority of the charged employees.

35. CSX's remaining employees who rely on FMLA leave are now terrified to exercise their rights under the FMLA. Having received CSX's message loud and clear, CSX's employees now go to all possible lengths to avoid taking FMLA leave.

## PLAINTIFF JOHN BARNETT

36. Plaintiff John Barnett suffers from high blood pressure.

37. Plaintiff John Barnett's high blood pressure results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

38. Plaintiff John Barnett's high blood pressure substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

39. CSX approved Plaintiff John Barnett's request for intermittent FMLA leave.

40. Plaintiff John Barnett submitted the paperwork necessary to maintain his intermittent FMLA leave.

41. Plaintiff John Barnett's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

42. During the 2017 Christmas and New Year's Eve holidays, Plaintiff John Barnett's

high blood pressure caused him to be unable to safely perform his job.

43. Plaintiff John Barnett therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

44. Thereafter, CSX accused Plaintiff John Barnett of abusing his intermittent FMLA leave and terminated him.

45. CSX had no reason to believe Plaintiff John Barnett was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

### PLAINTIFF JASON BILLINGSLEY

46. Plaintiff Jason Billingsley suffers from a serious health condition within the FMLA's meaning.

47. Plaintiff Jason Billingsley's serious health condition results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

48. Plaintiff Jason Billingsley's serious health condition substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

49. Plaintiff Jason Billingsley requested intermittent FMLA leave for his serious health condition.

50. CSX approved Plaintiff Jason Billingsley's request for intermittent FMLA leave.

51. Plaintiff Jason Billingsley submitted the paperwork necessary to maintain his intermittent FMLA leave.

52. Plaintiff Jason Billingsley's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

53. From December 23, 2017 at 3:00 a.m. to December 24, 2017 at 11:50 p.m., Plaintiff Jason Billingsley's serious health condition caused him to be unable to safely perform his job.

54. Plaintiff Jason Billingsley therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

55. Thereafter, CSX accused Plaintiff Jason Billingsley of abusing his intermittent FMLA leave and terminated him.

56. CSX had no reason to believe Plaintiff Jason Billingsley was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF JEREMY CLIFFORD

57. Plaintiff Jeremy Clifford's spouse suffers from a serious health condition within the FMLA's meaning.

58. Plaintiff Jeremy Clifford's spouse's serious health condition results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

59. Plaintiff Jeremy Clifford's spouse's serious health condition substantially limits her ability to care for herself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

60. Plaintiff Jeremy Clifford requested intermittent FMLA leave for his spouse's serious health condition.

61. CSX approved Plaintiff Jeremy Clifford's request for intermittent FMLA leave.

62. Plaintiff Jeremy Clifford submitted the paperwork necessary to maintain his

intermittent FMLA leave.

63. Plaintiff Jeremy Clifford's use of FMLA leave caused negative points under CSX's CAPS system to remain on his record.

64. On March 28, 2018, Plaintiff Jeremy Clifford's spouse's serious health condition necessitated him missing work.

65. Plaintiff Jeremy Clifford therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

66. CSX nevertheless assigned points to Plaintiff Jeremy Clifford for his absence.

67. CSX then terminated Plaintiff Jeremy Clifford because of those points and the points that remained on his record because of his prior FMLA use.

## PLAINTIFF MIKE ROBBINS

68. Plaintiff Mike Robbins suffers from migraines.

69. Plaintiff Mike Robbins's migraines result from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

70. Plaintiff Mike Robbins's migraines substantially limit his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

71. Plaintiff Mike Robbins requested intermittent FMLA leave for his migraines.

72. CSX approved Plaintiff Mike Robbins's request for intermittent FMLA leave.

73. Plaintiff Mike Robbins submitted the paperwork necessary to maintain his intermittent FMLA leave.

74. Plaintiff Mike Robbins's use of FMLA leave caused negative points under CSX's

CAPS system to remain on his record.

75. During the 2017 holiday season, Plaintiff Mike Robbins's migraines caused him to be unable to safely perform his job.

76. Plaintiff Mike Robbins therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

77. Thereafter, CSX accused Plaintiff Mike Robbins of abusing his intermittent FMLA leave and suspended him without pay.

78. CSX had no reason to believe Plaintiff Mike Robbins was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## PLAINTIFF BRYAN STUTZ

79. Plaintiff Bryan Stutz suffers from PTSD.

80. Plaintiff Bryan Stutz's PTSD results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

81. Plaintiff Bryan Stutz's PTSD substantially limits his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

82. Plaintiff Bryan Stutz requested intermittent FMLA leave for his PTSD.

83. CSX approved Plaintiff Bryan Stutz's request for intermittent FMLA leave.

84. Plaintiff Bryan Stutz submitted the paperwork necessary to maintain his intermittent FMLA leave.

85. Plaintiff Bryan Stutz's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

86. In September of 2018, CSX terminated Plaintiff Bryan Stutz because of those points.

## PLAINTIFF KYLE WOOD

87. Plaintiff Kyle Wood suffers from anxiety, depression, and insomnia.

88. Plaintiff Kyle Wood's anxiety, depression, and insomnia results from anatomical physiological and/or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

89. Plaintiff Kyle Wood's anxiety, depression, and insomnia substantially limit his ability to care for himself, perform manual tasks, see, hear, eat, sleep, walk, stand, lift, bend, speak, breathe, learn, read, concentrate, think, communicate, and/or work.

90. Plaintiff Kyle Wood requested intermittent FMLA leave for his anxiety, depression, and insomnia.

91. CSX approved Plaintiff Kyle Wood's request for intermittent FMLA leave.

92. Plaintiff Kyle Wood submitted the paperwork necessary to maintain his intermittent FMLA leave.

93. Plaintiff Kyle Wood's use of FMLA leave caused negative points under CSX's CAPS system to remain on her record.

94. During April of 2019, Plaintiff Kyle Wood's anxiety, depression, and insomnia caused him to be unable to safely perform his job.

95. Plaintiff Kyle Wood therefore notified CSX via one of the means specified in its policies that he needed to use the intermittent FMLA leave for which he had been approved.

96. Thereafter, CSX accused Plaintiff Kyle Wood of abusing his intermittent FMLA leave and suspended him without pay.

97.     CSX had no reason to believe Plaintiff Kyle Wood was abusing his intermittent FMLA leave. Rather, the company punished him for taking time off on a holiday.

## CLASS ALLEGATIONS

98.     Plaintiffs Jason Billingsley, Jeremy Clifford, Mike Robbins, Bryan Stutz, and Kyle Wood ("FMLA Plaintiffs") bring FMLA claims against CSX pursuant to Federal Rule of Civil Procedure 23, seeking back pay, monetary relief, other compensatory relief, and injunctive and declaratory relief on behalf of themselves and the following class:

**FMLA Attendance Points Class:**

Individuals employed by CSX who, at any time from three years preceding the complaint's filing to the resolution of this action, had attendance points remain on their record solely because they took FMLA leave.

Plaintiffs reserve the right to revise these class definitions based on discovery or other legal developments.

99.     Class treatment is appropriate because the classes are so numerous that joinder of all members is impracticable. The exact number within the classes is unknown, but it may be determined from records maintained by CSX. CSX has estimated that there are 140 people who were punished or terminated for using FMLA leave during the 2017 holiday season. The Attendance Points Classes apply to a much larger group of employees.

100.    Class treatment is appropriate because there are questions of law or fact common to the classes, including the following:

      a. whether CSX engaged in a pattern and practice of retaliation against class members on the basis of their use of FMLA leave or interfered with class members' use of FMLA leave;

      b. whether CSX's companywide policy of disqualifying employees who take FMLA leave from having the attendance points expunged violates the FMLA;

      c. whether monetary damages, injunctive relief, and other equitable remedies are

        warranted; and

        d. whether punitive damages are warranted.

101. Class treatment is appropriate because CSX will raise common defenses to the claims.

102. Class treatment is appropriate because Plaintiffs are typical of the classes' claims, and Plaintiffs will fairly and adequately protect the classes' interests.

103. Class treatment is appropriate because Plaintiffs have retained counsel who are competent, experienced in litigating class actions, and will effectively represent the interests of the classes.

104. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for CSX and/or would create a risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

105. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(2) because CSX has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

106. Class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact, including those listed above, predominate over any questions affecting only individual members, and because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

107. Class treatment of is appropriate under Federal Rule of Civil Procedure 23(c)(4) because this is a case in which class adjudication of particular issues would serve the interests of the parties and the Court.

## CAUSES OF ACTION

### COUNT I
### VIOLATIONS OF THE FMLA—INTERFERENCE
**(Brought by FMLA Plaintiffs on Behalf of Themselves)**

108. The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

109. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

110. CSX interfered with, restrained, and denied the exercise of the protected rights of FMLA Plaintiffs when it, among other things, charged them with a workplace rule violation for taking FMLA leave, removed them from service for the supposed violations, and disciplined them.

111. Because CSX violated the FMLA, FMLA Plaintiffs are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. FMLA Plaintiffs are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

112. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of FMLA Plaintiffs. As a result, FMLA Plaintiffs are entitled to punitive

damages.

## COUNT II
### VIOLATIONS OF THE FMLA—INTERFERENCE
**(Brought by FMLA Plaintiffs on Behalf of Themselves and the FMLA Attendance Points Class)**

113. The FMLA entitles employees to up to twelve weeks of leave during any twelve-month period for certain reasons, including the employee's serious health condition. *See* 29 U.S.C. § 2612(a)(1).

114. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1).

115. CSX interfered with, restrained, and denied the exercise of the protected rights of FMLA Plaintiffs and the putative class members when it, among other things, disqualified them from having attendance points expunged, charged them with a workplace rule violation for attendance points, removed them from service for the supposed violations, and disciplined them.

116. Because CSX violated the FMLA, FMLA Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. FMLA Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

117. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of FMLA Plaintiffs and the putative class. As a result, Plaintiffs and the putative class members are entitled to punitive damages.

### COUNT III

**VIOLATIONS OF THE FMLA—DISCRIMINATION**
**(Brought by FMLA Plaintiffs on Behalf of Themselves)**

118. The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

119. CSX discriminated against FMLA Plaintiffs' rights under the FMLA when, among other things, charged them with a workplace rule violation for using taking FMLA leave, removed them from service for the supposed violations, forced them to defend themselves from such charges by having them submit more information about the condition that necessitated their FMLA leave than is allowed under the law, and disciplined them for taking FMLA leave.

120. Because CSX violated the FMLA, FMLA Plaintiffs are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. FMLA Plaintiffs are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

121. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of FMLA Plaintiffs. As a result, they are entitled to punitive damages.

**COUNT IV**
**VIOLATIONS OF THE FMLA—DISCRIMINATION**
**(Brought by FMLA Plaintiffs on Behalf of Themselves and the FMLA Attendance Points)**

122. The FMLA makes it is unlawful for "any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by [the Act]." *See* 29 U.S.C. § 2615(a)(2).

123. CSX discriminated against FMLA Plaintiffs' and the putative class members' rights under the FMLA when, among other things, it disqualified them from having attendance

points expunged, charged them with a workplace rule violation for attendance points, removed them from service for the supposed violations, and disciplined them.

124. Because CSX violated the FMLA, Plaintiffs and the putative class members are entitled to compensatory damages for loss of income, including back pay, lost benefits, consequential damages, and front pay, as well as liquidated damages, garden-variety emotional distress damages, declaratory and injunctive relief, reinstatement, and other damages. FMLA Plaintiffs and the putative class members are also entitled to attorneys' fees, costs, and interest incurred in connection with these claims.

125. CSX committed the above-alleged acts with reckless or deliberate disregard for the rights and safety of Plaintiffs and the putative class. As a result, they are entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all class members, pray for relief as follows:

A. Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B. Designation of Plaintiffs as the representatives of the Classes, and Plaintiffs' counsel as Class Counsel;

C. An order expunging all discipline related to the use of FMLA from each of Plaintiffs' and the putative class members' work records, and reinstating those Plaintiffs and putative class members for whom such discipline resulted in termination;

D. An order requiring CSX to pay to Plaintiffs and the putative class members an award for compensatory damages, damages for loss of income, back pay, lost benefits, consequential damages, front pay, liquidated damages, and other damages in an amount to be determined by the trier of fact;

E. An order requiring CSX to pay to Plaintiffs and the putative class members an award for garden-variety emotional distress;

  F.  An order requiring CSX to pay to Plaintiffs and the putative class members an award for costs (including litigation and expert costs), disbursements, interest, and attorneys' fees;

  H.  An order enjoining CSX from disqualifying employees who take FMLA leave from having their attendance points reduced and declaring such conduct to be in violation of the FMLA;

  I.  An order enjoining CSX to cease engaging in a pattern and practice of retaliating against employees for taking FMLA leave and declaring such conduct to be in violation of the FMLA; and

  K.  Such other relief as the Court deems just and proper.

Dated: July 23, 2019        Respectfully submitted,

               Law Offices of Audrey Hildes Schechter

               */s/ Audrey Schechter*
               Audrey Schechter (Bar #962589)
               P.O. Box 445
               Largo, Florida 33779
               Email: audreyschechterlaw@gmail.com
               *Local Counsel for Plaintiff*

               **THE MOODY LAW FIRM**
               Nicholas D. Thompson (VA # 92821)
               nthompson@moodyrrlaw.com
               500 Crawford St., #200
               Portsmouth, VA 23704
               Telephone: (757) 399-8906
               Fax: (757) 397-7257

               *TRIAL ATTORNEYS FOR PLAINTIFFS*

               *Pro Hac Vice* motion will be filed shortly

I hereby certify that on (date) , I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.

Law Offices of Audrey Hildes Schechter

*/s/ Audrey Schechter*
Audrey Schechter (Bar #962589)